# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| JAIME SMITH, as next friend of J.S. | ) | |
| and K.S., minor children and next kin | ) | |
| of GREGORY THOMAS SMITH, | ) | |
| | ) | |
|       Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 2:15-CV-123 |
| | ) | |
| LAKE COUNTY, et al., | ) | |
| | ) | |
|       Defendants. | ) | |
| | ) | |
| ———————————— | ) | |
| | ) | |
| LAKE COUNTY, INDIANA, | ) | |
| | ) | |
|       Counter Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JAIME SMITH, | ) | |
| | ) | |
|       Counter Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court for resolution of three pending motions to dismiss.

Defendant Lake County Sheriff John Buncich filed a motion to dismiss (DE 37), to which

Plaintiff Jaime Smith filed a response in opposition (DE 45) and Buncich filed a reply (DE 46).

Smith later filed her own motion to dismiss Defendant Lake County's counter-complaint (DE

60), to which Defendant Lake County filed a response in opposition (DE 71) and Smith filed a

reply (DE 74). Finally, Defendants Town of Merrillville and Merrillville police officer Aaron

Ridgway also filed a motion to dismiss (DE 87), to which Smith filed a response indicating that

she had no objection to the motion (DE 88). For the reasons set forth in this Opinion and Order,

the motion to dismiss filed by Buncich is GRANTED in part, DENIED in part, and MOOT in part. The motion is MOOT as to any and all claims asserted against Defendant Buncich in his *individual* capacity; the motion is DENIED as to Plaintiff's claims against Buncich in his *official* capacity (i.e., the Plaintiff's claim under *Monell v. Dep't of Soc. Servs. of City of New York*); the motion is DENIED as to the Plaintiff's claim against Buncich based on a state law theory of *respondeat superior*; and the motion is GRANTED as to the Plaintiff's claim for indemnification. The motion to dismiss filed by Town of Merrillville and Officer Ridgway is GRANTED and those two Defendants are dismissed as parties to this case. The Plaintiff's motion to dismiss Defendant Lake County's counterclaim is DENIED.

## BACKGROUND

The underlying facts of this case are taken from the Plaintiff's Second Amended Complaint filed on April 19, 2016 (DE 33). Plaintiff Jaime Smith brought this lawsuit in her capacity as Administratrix of the Estate of Gregory Smith, and as the mother of Mr. Smith's minor children, J.S. and K.S. Smith asserts various causes of action under 42 U.S.C. § 1983 and state law claims. She names the following entities and individuals as defendants: Lake County, Indiana; Lake County Sheriff John Buncich; Lake County Officers Fotia and Zimora; Lake County Corrections Officers Peters, Savadra, Machinkowski, Buck, Hagen, Fotinos, Omamull, and Laurent; the Town of Merrillville, Indiana; and Merrillville Police Officer Aaron Ridgway.[1]

---

[1] The first names of the individual Defendant officers are nowhere to be found in the record (at least so far as the Court could discover from examining the filings, which included perusing each Defendant's notice of waiver of service (DE 50-59) and their answers to the Amended Complaint (DE 61-70)). The individual Defendants are always referred to as "Officer Fotia," "Officer Zimora," and so forth. The Court discovered that Defendant Officer Ridgway's first name is Aaron only because he submitted an affidavit in support of his motion to dismiss that includes that information. Town of Merrillville and Ridgway motion to dismiss (DE 87),

Smith states and alleges that on March 25, 2015, Gregory Smith was arrested in Hobart, Indiana, by officers of the Hobart Police Department for driving 35 miles per hour in a 30 miles per hour zone. Mr. Smith was transferred to the custody of the Crown Point Police Department and taken to the Lake County Jail. While being held at Lake County Jail, Mr. Smith allegedly became emotionally distraught and began suffering from a mental episode. At one point Mr. Smith banged his hands and head on the glass window in his holding cell. Plaintiff alleges that the individual Defendants–Officers Machinkowski, Peters, Savadra, and Buck–all witnessed Mr. Smith suffering a mental episode. Plaintiff alleges that these four officers removed Mr. Smith from his holding cell and physically assaulted him, beating him with their fists and using a taser on him. Plaintiff alleges that the four officers were joined by jail corrections officers Hagen and Laurent, who also allegedly assaulted Mr. Smith. Tragically, Mr. Smith went into cardiac arrest and died in the jail. Plaintiff alleges that Mr. Smith's death was the result of excessive force used against him by the individual Defendants, and also alleges that the Lake County Sheriff's Department is liable for having a custom or practice of failing to provide adequately for the mental health needs of inmates and detainees. Based on these facts and allegations, Plaintiff brought the following claims:

1) Excessive force claims against all the individual officers named above (Amended Complaint, p. 14 (Count I));

2) Failure to intervene claims against all the individual officers named above *and* Merrillville Police Officer Ridgway (*Id.*, p. 16 (Count II));

3) Claims against the Lake County Sheriff's Department and Lake County pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), for having an institutional custom,

Exh. A, Affidavit of Aaron Ridgway. This is merely an observation and is not pertinent to any of the three pending motions.

pattern or procedure that resulted in the deprivation of the constitutional rights of inmates and detainees in need of mental health treatment (*Id.*, p. 18 (Count III));

4) A "supplemental *respondeat superior* claim" alleging that Sheriff Buncich "as principal, is liable for the actions of [his] agents under the doctrine of *respondeat superior* for all state law claims herein." (*Id.*, p. 22 (Count IV));

5) An Indiana state law claim for "wrongful death battery" against all the individual Defendant officers in contradiction of Indiana Code § 34-23-1-1 (*Id.*, p. 23 (Count VII[2])); and

6) Indiana state law claims for indemnification against the Lake County Sheriff (*Id.*, p. 22 (Count V)), Lake County (*Id.*, p. 23 (Count VI)), and Town of Merrillville (*Id.*, p. 24 (Count VIII)).

## STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) allows a defendant to move to dismiss a complaint that fails to "state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 555 (2007). Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (internal citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

---

[2] Count VII of Plaintiff's Amended Complaint is misnumbered as "Count VIII."

**DISCUSSION**

**I. Motion to dismiss by Town of Merrillville and Officer Ridgway.**

Defendants Town of Merrillville and Merrillville police officer Aaron Ridgway argued in their motion to dismiss that the Plaintiff's claims against them must be dismissed since Ridgway was not present on the date of Mr. Smith's arrest or death (having been mistakenly identified as appearing in a photograph taken at the jail on the day of the tragic incident). Plaintiff's concomitant claim against the Town itself thereby falls by the wayside since it was a claim for indemnification from the Town for the alleged acts of its employee, Ridgway. Motion to Dismiss (DE 87), pp. 1-3. Smith expressly concedes the motion, stating in her response that she "has no objection to Defendants Ridgway's and Town of Merrillville's Motion to Dismiss." Plaintiff's Response to Ridgway Motion, p. 1. Accordingly, the motion is granted and any and all claims asserted against the Town of Merrillville or Merrillville police officer Aaron Ridgway are dismissed.

**II. Motion to dismiss by Sheriff Buncich.**

The Court's ruling on Buncich's motion involves only the claims asserted against him and does not affect any of the Plaintiff's claims against any other Defendants. Buncich asks the Court to "dismiss all claims that have been ambiguously alleged against . . . Buncich in his individual capacity[,] . . . dismiss all Count III *Monell* claims alleged against . . . Buncich" and to dismiss "Plaintiff's state law *respondeat superior* claim alleged in Count IV[.]" Motion to Dismiss, p. 1. Also, while he does not address it in his motion, Buncich makes clear in his brief that he is seeking dismissal of Smith's indemnification claim also, contending that it "is not ripe[]" and therefore "it must fail for lack of subject matter jurisdiction." Defendant's

Memorandum in Support (DE 38), p. 2. In other words, Buncich seeks dismissal of *all* the claims asserted against hm, whether in his individual or official capacity.

### A. Individual capacity claims.

Buncich argued in his memorandum that all individual claims asserted against him, if there were any, should be dismissed because he had no personal involvement with or knowledge of the incident involving Mr. Smith, precluding any individual capacity claim. Memorandum in Support, pp. 1-2. Plaintiff concedes this point and states in her response that she "has not alleged an individual capacity claim against the Sheriff." Plaintiff's Response, p. 8. She further clarifies that she "brings an official capacity claim against the Sheriff and individual capacity claims against the individual officers." *Id.*, p. 9. Accordingly, the motion to dismiss as to the issue of any individual claims against Buncich is MOOT.

### B. *Monell* claim.

Buncich argues that Smith's *Monell* claim must be dismissed because it "is based on generalized allegations of unrelated past misconduct by various members and divisions of the Lake County Sheriff's Department. Allegations that past generalized bad behavior led to future generalized bad behavior fail the rigorous standards of culpability and causation required for municipal liability. . . . Plaintiff's Count III *Monell* claim is based upon scattered allegations, spanning the past ten (10) years . . . ." Defendant's Memorandum, p. 2 (citations omitted). Buncich insists that Smith's "Amended Complaint is devoid of any specific policy or custom that led to [the alleged] underlying constitutional violation[]" and further insists that all Plaintiff bases her *Monell* claim on is a vague assertion that there existed in the Lake County Sheriff's Department a pattern or practice of "lawlessness" that resulted in the violation of Mr. Smith's

constitutional rights. *Id.*

Claims against governmental entities (including a county sheriff) based on an allegedly unconstitutional policy, practice, or custom are permitted under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Here, Smith alleges that the Lake County Sheriff's Department has a policy, practice, or custom of egregious treatment of detainees and inmates in general, and individuals with mental health disorders in particular. In order to prevail on such a claim, a plaintiff must plead sufficient facts to show "a pattern or practice of constitutional violations." *Wade v. Lain*, 2016 WL 2910026, at *1 (N.D. Ind. May 19, 2016) (citing *Monell*, 436 U.S. at 690-91). A recent opinion from the Seventh Circuit summarizes a plaintiff's burden in such cases (and thereby informs this Court's review). The court explained as follows:

> To prove an official policy, custom, or practice within the meaning of *Monell*, [a plaintiff] must show more than the deficiencies specific to his own experience[.] . . . When seeking to rely upon indirect proof, he must come forward with evidence that could allow a reasonable trier of fact to find, . . . "systemic and gross deficiencies in staffing, facilities, equipment, or procedures in a detention center's medical care system." If [a plaintiff] meets this mark, he must then show that a policymaker or official knew about these deficiencies and failed to correct them. . . . He need not present evidence that these systemic failings affected other specific inmates. See *Davis* [*v. Carter*], 452 F.3d [686] at 695 [7th Cir. 2006]) ("To establish a widespread custom or policy, the plaintiff here was not required to show that Cook County's alleged repeated pattern of delay . . . actually caused pain and suffering to other inmates in need of medical intervention. . . .").

*Daniel v. Cook County*, 833 F.3d 728, 734-35 (7th Cir. 2016) (some internal citations omitted).

In the present case, Smith's *Monell* claim is supported in part, she argues, by a 2009 report prepared by the U.S. Department of Justice that was issued following an investigation by the Department of the conditions in the Lake County Jail. Smith's Amended Complaint summarizes relevant portions of the DOJ report as follows:

122. Subsequent to an investigation into conditions at the Lake County Jail, on December 7, 2009, the United States Department of Justice issued a "Findings Letter" pursuant to 42 U.S.C. § 1997 that concluded that the LCJ engages in a pattern or practice of conduct that subjects inmates to systemic violations of federal constitutional rights, specifically in regard to: (1) suicide prevention, (2) mental health care, (3) the medical care, and (4) sanitary and safe living conditions.

123. The investigation revealed that the LCJ's medical care practices fall below the minimum constitutionally required standards of care. Particularly, it found constitutionally inadequate LCJ's: (1) medical staffing; (2) access to medical care; (3) acute and chronic medical care; (4) comprehensive health assessments; (5) medication administration; (6) medical records; and (7) quality improvement.

124. Specifically in regards to Mental Health Care, the Department of Justice called for the LCJ to: "Change the current "crisis response" mental health care model to a system that proactively identifies inmates who are in need of treatment or at risk of harm" and to "Ensure collaboration with medical and custody staff in those areas that overlap, such as intake assessments, confidentiality for interviews, suicide prevention and management, and treatment planning."

125. Lake County Sheriffs, including . . . Buncich, . . . acted with deliberate indifference to the rights of inmates in the jail by allowing lawlessness to occur.

Amended Complaint, pp. 19-20, ¶¶ 122-125. Oddly, Smith did not attach a copy of the DOJ report to her Amended Complaint nor did she file it as an exhibit to any of her briefs. Nonetheless, she expressly refers to it (and even quotes from it) in her Amended Complaint and it is relevant to her *Monell* claim, so the Court can consider it. Also, the Court need not convert the motion to dismiss to a motion for summary judgment in order to consider the Report as part of the Amended Complaint. *See, e.g., Am. Commercial Lines LLC v. Lubrizol Corp.*, 2014 WL 6673606, at *1 (S.D. Ind. Nov. 24, 2014) ("[I]t is well-established under Seventh Circuit law that, for purposes of a Rule 12(b)(6) motion, the pleadings 'consist generally of the complaint, any exhibits attached thereto, and supporting briefs.' . . . The court is allowed to consider such materials on a motion to dismiss without converting it to a motion for summary judgment.")

(internal citations omitted). In any event, the report is admissible for other reasons, including because Buncich does not move to strike the references to the report or otherwise challenge Smith's recitation of the findings and conclusions contained in the report (instead, he simply argues that it is not relevant), and because the report is a matter of public record and the Court can take judicial notice of it for that reason. Also, the DOJ report is presumptively admissible under Fed.R.Evid. 803(8)(A)(iii) as a "hearsay exception in civil cases for 'factual findings from a legally authorized investigation.'" *Daniel*, 833 F.3d at 731 (quoting Rule 803).[3] The Defendants bear the burden of rebutting the presumption of admissibility as well as the factual findings contained in the report. "The defendants are entitled to a full opportunity to rebut it. . . .  There may be individual circumstances that might justify exclusion of the Report, perhaps because it is no longer sufficiently timely or does not fit sufficiently well the issues in a particular case. But the general presumption of admissibility in the text of Rule 803(8) has considerable force.'" *Id.* at

---

[3] The DOJ Report is a matter of public record. *See* "Justice Department Reaches Agreement to Correct Conditions at Lake County Jail," U.S. Department of Justice, Office of Public Affairs, Dec. 3, 2010 (available at https://www.justice.gov/opa/pr/justice-department-reaches-agreement-correct-conditions-lake-county-jail) (visited February 7, 2017). Even a copy of a settlement agreement, which Lake County and the Justice Department entered into on August 18, 2010, is published on the Justice Department website. *See* Lake County Jail Settlement Agreement (available at https://www.justice.gov/sites/default/files/crt/legacy/2011/01/05/lake_co_jail_settle_12-03-10.pdf) (visited February 7, 2017). A court can take judicial notice of relevant evidence if that evidence is a matter of public record. *See Archer v. Chisholm*, 191 F.Supp.3d 932, 959 n. 10 (E.D. Wis. 2016) (a court "may take judicial notice of [documents that are] publicly available court records."); *see also*, *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013) (a court may take judicial notice of court records); *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012) ("Taking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment.") (citations omitted); *Martinez v. Cook County*, 2012 WL 6186601, at *4 n. 7 (N.D.Ill. Dec.12, 2012) (collecting cases that have admitted similar DOJ reports at trial under Federal Rule of Evidence 803(8)).

742.

In *Daniel* the plaintiff, in support of his *Monell* claim, submitted a Justice Department report that found considerable deficiencies in medical care in the Cook County (Illinois) Jail. The district court declined to consider the report, but the Seventh Circuit reversed and remanded the case. In fact, many courts have addressed this precise issue and most have held that similar Justice Department reports are admissible to assess a plaintiff's *Monell* claim. *See id.*, at 741 (listing cases addressing admissibility of Justice Department investigative reports). Accordingly, for purposes of the present motion to dismiss, the DOJ Report is admissible, relevant, and will be considered by the Court when assessing the sufficiency (or insufficiency, as Buncich contends) of Smith's allegations.

Turning back to Smith's *Monell* claim, it is well established that a suit against a sheriff in his official capacity is equivalent to a suit against the governmental entity that employs the sheriff, meaning the county sheriff's department. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *see also*, *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008) (official capacity claims against municipal officials are claims against the municipal body itself). In order to prevail on such a claim, a plaintiff must plead sufficient facts to show a pattern or practice of constitutional violations. *Wade v. Lain*, 2016 WL 2910026, at *1 (N.D. Ind. May 19, 2016) (citing *Monell*, 436 U.S. at 690-91). In *Daniel*, the Seventh Circuit summarized a plaintiff's burden in such cases and that summary informs and refines this court's standard of review. The appellate court explained as follows:

> To prove an official policy, custom, or practice within the meaning of *Monell*, [a plaintiff] must show more than the deficiencies specific to his own experience[.] .
> . . When seeking to rely upon indirect proof, he must come forward with evidence

that could allow a reasonable trier of fact to find, . . . "systemic and gross deficiencies in staffing, facilities, equipment, or procedures in a detention center's medical care system." If [a plaintiff] meets this mark, he must then show that a policymaker or official knew about these deficiencies and failed to correct them. . . . He need not present evidence that these systemic failings affected other specific inmates. See *Davis* [*v. Carter*], 452 F.3d [686] at 695 [7th Cir. 2006)] ("To establish a widespread custom or policy, the plaintiff here was not required to show that Cook County's alleged repeated pattern of delay . . . actually caused pain and suffering to other inmates in need of medical intervention. . . .").

*Daniel*, 833 F.3d at 734-35 (some internal citations omitted). Of course, this case is before the Court now on a motion to dismiss, so Smith need not *prove* that there were "systemic and gross deficiencies" in medical care at the Lake County Jail, but she must present "enough facts to state a claim to relief that is plausible on its face."

Buncich argues that Smith's Amended Complaint fails to meet that standard. He contends that "[P]laintiff's Count III *Monell* claim . . . must fail because it has not adequately alleged that a constitutional right was violated as a result of a specific 'custom, policy, or practice' of the Sheriff's Department. Plaintiff has instead tenuously filled her Amended Complaint with a ten (10) year history of miscellaneous and unrelated allegations of past misconduct brought against various officers in various divisions of the Lake County Sheriff's Department, and without sufficient explanation or specificity, she has rested her *Monell* claim entirely on that history. . . . Stating a valid *Monell* claim requires more than merely listing previous instances of alleged misconduct and from that alleging the existence of an 'abstract [policy] of violating citizens' constitutional rights.'" Defendant's Memorandum, p. 7.

Buncich's argument that Smith's allegations and evidence are insufficient to support her *Monell* claim and, consequently, that her Amended Complaint is too vague to pass muster under the Rule 12(b)(6) standard, is unconvincing. Smith's references to the findings and conclusions

contained in the DOJ report are much more specific and detailed than Buncich admits. Smith

summarizes findings in the report and explains their purported relevance to her case as follows:

> While Mr. Smith's story may be shocking, Mr. Smith's experience was far from
> unusual. Rather, what happened to him is indicative of Lake County Jail's long
> and sordid record of failing to provide medical care for inmates suffering from
> mental health diseases. Due to this and other disturbing allegations, the [DOJ]
> inestigated Lake County Jail in 2009. . . . The [DOJ's] investigation concluded
> Lake County Jail "engages in a pattern or practice of conduct that subjects the
> inmates to systemic violations of federal constitutional rights, specifically in
> regard to: (1) suicide prevention, (2) mental health care, (3) . . . medical care, and
> (4) sanitary and safe living conditions." The report called for Lake County Jail to
> "change the current crisis response mental health care model to ensure
> collaboration with medical and custody staff in those areas that overlap, such as
> intake assessments, confidentiality for interviews, suicide prevention and
> management, and treatment planning."

Plaintiff's Response, pp. 2-3 (quoting DOJ Report).

Smith also argues in her brief that "troubling omissions from the autopsy performed on

Mr. Smith suggest that Lake County Coroner, Merilee D. Frey has been complicit in concealing

misconduct by Lake County Sheriff's employees. . . . Suspiciously and profoundly absent in the

autopsy performed by Lake County Pathologist, Kim M. Young, was any review of the video

evidence of the assault on Mr. Smith and/or analysis of the use of force by Defendant Officers

immediately preceding his death." *Id*., p. 3.

Finally, Smith contends that "[p]rior acts of violence and examples of lawlessness at Lake

County Jail abound. For several months in 2006, Lake County Jail Officers prohibited inmates

from leaving overcrowded cells for 24 hours at a time . . . . In 2009, Lake County Jail officers

caused the death of a mentally ill inmate due to dehydration. . . . In 2011, Lake County Sheriff's

officers 'put a hit' on an inmate in retaliation for reporting sexual abuse by officers. . . .[and] [i]n

2013, a Lake County Sheriff's Deputy committed sexual assault while on duty." *Id*. (citing DOJ

Report findings). Even more specifically, Smith alleges that the Lake County Jail had a policy or custom of deliberate indifference to the medical needs of inmates and detainees with mental health issues. The Plaintiff states Buncich, as Sheriff, "by and through his officers, failed to provide adequate "psychotropic medication management" or adequate "treatment and overall attention from mental health staff," that they "fail[ed] to identify many inmates that needed mental health care," and that they "fail[ed] to develop comprehensive treatment plans for inmates suffering from mental illness." *Id*., pp. 5-6. (These assertions are paraphrases of findings and conclusions contained in the DOJ report.)

These examples of egregious behavior, argues Smith, support her contention that a custom or policy of denying adequate medical care to mentally ill inmates and of general "lawlessness" in the Lake County Sheriff's Department resulted in Mr. Smith's death. Many of her factual statements come directly from the DOJ report.

Recall that in order to survive a motion to dismiss under Rule 12(b)(6), a complaint must be "facially plausible," which means it must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Smith's Amended Complaint meets this standard and is certainly specific and detailed enough to put Buncich on notice of her intent to pursue a *Monell* claim and the underlying facts and assertions on which that claim is based. She presents admissible evidence of a pattern and custom of what she characterizes as general and egregious "lawlessness" in the operation of the Lake County Jail. Smith alleges that this pattern of lawlessness reared its ugly head on March 25, 2015, when Gregory Smith, who had been arrested for speeding, died just hours after being detained in the Lake County Jail and after he was allegedly assaulted by

Sheriff's Department officers–allegations that sit undisputed at present. Nonetheless, Buncich argues that Smith's factual assertions and evidence are inadequate to state a claim, contending that they are too vague and the evidence she uses to support her claim–the DOJ report–is rendered meaningless because it includes evidence of problems at the jail that are too remote in time to be relevant or are not relevant under the facts of this case. Maybe he is right, and maybe when the record in this case is more developed Buncich will be able to establish that the Plaintiff's claim against him is not sustainable as a matter of law (as in a subsequent motion for summary judgment or at trial). But we are not there yet, and the Plaintiff's allegations, her admissible evidence, and the (thus far) undisputed facts of this case are sufficient (arguably overwhelmingly so) to defeat a Rule 12(b) motion to dismiss. For all of these reasons, Defendant Buncich's motion to dismiss the Plaintiff's *Monell* claim, i.e., her official capacity claim, is denied.

## C. *Respondeat Superior* **claim.**

The Plaintiff has asserted a claim against Buncich, again in his official capacity as Sheriff, claiming he is liable for damages sustained as the result of his employees' (that is, all of the individual Defendants) alleged battery of Gregory Smith. Amended Complaint, p. 22 (Count IV). Smith claims that Buncich, "as principal, is liable for the actions of [his] agents under the doctrine of respondeat superior[.]" *Id*. Buncich argues this claim should be dismissed because Smith is not permitted, under Indiana law, to recover on both a vicarious liability claim against an employer or principal (such as a sheriff's department) *and* individual liability claims against that principal's employees or agents. Defendant's Memorandum, p. 9. Buncich contends that if an agent or employee acting *outside the scope of his employment* commits a tort, no claim would

lie against the principal. *Id*. If, on the other hand, the alleged tort is committed while the employee is acting *within* the scope of his employment, then vicarious liability would attach and the claims against the individuals themselves would fall by the wayside. *Id*. Buncich cites no authority to support his position, but argues that it is supported by the Indiana Tort Claim Act itself. That statute, argues Buncich, "allows recovery only from either the government entity if the act or omission was within the scope of employment, or against the employee individually, if the act or omission was outside the scope of employment." *Id*., p. 10 (citing I.C. § 34-13-3-5). Indeed, the statute states in relevant part that "[a] lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally." Indiana Code § 34-13-3-5(b). So, Buncich argues that the Plaintiff's *respondeat superior* claim should be dismissed for two reasons: first, because she has failed to give "fair notice of whether she seeks individual liability or entity liability for her state law claims pursuant to the Indiana Torts Claim Act[]" and second because such a claim is not "plausible under the [ITCA]." *Id*.

Smith's retort to this argument is a bit curious. She claims that "[a]bsent support in federal jurisprudence, Defendants argue that an Indiana Statute (Ind. Code § 34-13-3-5(b)) governs the pleading requirements for a federal action." Plaintiff's Response, p. 8. She then asserts that Buncich's "argument misses the mark as the Federal Rules of Civil Procedure apply" to pleadings in federal court and "[a]s Defendants have [sic] applied a state statute to control a federal pleading, Defendants' motion on this score should be disregarded." *Id*., pp. 8-9. She piles on by arguing that "[a]s Defendants have [sic] failed to provide any legal support for the proposition that Ind. Code § 34-13-3-5 is to be followed in construing a federal claim, Plaintiff

prays that this Court deny Defendants' [sic] motion in this regard." *Id.*, p. 9.

In his reply brief, Buncich concedes that Smith has since clarified one thing–she is pursuing *only* an official capacity claim against Buncich (and individual capacity claims against the other Defendant officers). Still, he does not back down from his argument that the *respondeat superior* claim against him must be dismissed since Smith cannot seek recovery from both the Sheriff's Department and the individual tortfeasing officers. Defendant's Reply, p. 4. Buncich contends that Smith "misinterprets her *respondeat superior* claim against . . . Buncich and her wrongful death battery claim against the defendant officers as 'federal claims.' . . . [D]espite Plaintiff's argument otherwise, federal law provides the procedural law for the entire case and the substantive law for the Section 1983 claim, while state law provides the substantive law for all state law claims. . . . Therefore, Plaintiff must comply with Indiana Code § 34-13-3-5(b). . . . Therefore, Plaintiff's Count IV *respondeat superior* claim against . . . Buncich should be dismissed because, as pled, Plaintiff does not give fair notice of the claims that are asserted, nor is it plausible under Indiana law." *Id.*, pp. 4-5.

Both parties' arguments miss the point. While Buncich is correct that Smith cannot recover under both theories, that does not render her *respondeat superior* claim subject to dismissal at this point. Smith has pled alternative theories of recovery, or alternative claims, in her Amended Complaint, and "pleading in the alternative is permissible." *Reiner v. Dandurand*, 33 F.Supp.3d 1018, 1032 (N.D. Ind. 2014). In fact, Federal Rule 8 expressly provides that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones[]" and that "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Fed.R.Civ.P. 8(d)(2)-(3).

This Court has addressed this issue before and explained as follows:

> The Defendants are correct to the extent that they assert that under Indiana law the Plaintiffs cannot have it both ways; if [the police officer] was acting within the scope of his employment the Plaintiffs cannot *prevail* on their state law claims against him individually since he would be entitled to immunity and, if [the employee] was acting outside the scope of his employment, the City cannot be held liable for his actions. Indeed, a party cannot *recover* separately on inconsistent theories when one theory precludes the other. *See Brookhaven Landscape & Grading Co. v. J.F. Barton Contracting Co.*, 676 F.2d 516, 523 (11th Cir. 1982). Yet, while Plaintiffs cannot, at the end of the day, recover on inconsistent claims, Plaintiffs may plead inconsistent claims, and such claims can be submitted to the jury to be sorted out. *Whitt v. E.I. DuPont de Nemours & Co.*, 461 F.2d 1152, 1154 (6th Cir. 1972) (stating that inconsistent theories of recovery may be submitted to the jury); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1283 (3d ed. 2004) ("[A] pleader [m]ay set forth inconsistent legal theories in his or her pleading and will not be forced to select a single theory on which to seek recovery against the defendant."). Accordingly, although Plaintiffs have asserted inconsistent claims in that they cannot simultaneously recover on their tort claims against both the City and [the employee], this does not require the Court to find, as a matter of law, that one or the other of the claims is foreclosed at this stage of the proceedings.

*Miller v. City of Plymouth*, 2010 WL 1474205, at *7-8 (N.D. Ind. Apr. 9, 2010) (J. Van Bokkelen); *see also, Richmond v. Swinford*, 2012 WL 5903808, at *4 (N.D. Ind. Nov. 26, 2012) (refusing to dismiss plaintiff's *respondeat superior* claim against town while she also pursued battery claims against individual officers); *Townsend v. Wilson*, 2015 WL 4742115, at *10 (N.D. Ind. Aug. 10, 2015), aff'd, 652 F.App'x 449 (7th Cir. 2016) ("While [a plaintiff] arguably can plead inconsistent claims, he 'cannot, at the end of the day, recover on inconsistent claims.'") (quoting *Miller*, 2010 WL 1474205, at *8). For these reasons, Buncich's motion to dismiss is denied as to Smith's claim against him under the theory of *respondeat superior*.

### D. Indemnification claim.

In Count V of her complaint, Smith asserts a claim for indemnification against Buncich.

Amended Complaint, pp. 22-23. Such claims are available under Indiana statute and provide that public entities may be liable to pay judgments in cases involving civil rights violations for which present or former public employees are found liable. *See* I.C. § 34-13-4-1. Buncich argues that Smith's indemnification claim must be dismissed because it is premature. He contends that the Court should dismiss this claim for lack of subject jurisdiction since "'a claim for indemnity is not ripe until the underlying liability has been established.'" Defendant's Reply, p. 11 (quoting *Sowell v. Dominguez*, 2011 WL 294758 (N.D.Ind. Jan. 26, 2011)). As Judge Moody explained in *Sowell*:

> No one has been found liable yet in this case and no judgment has been entered. This court only has subject matter jurisdiction over a case in which the controversy is ripe. A claim is not ripe if it 'rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.' *Texas v. United States*, 523 U.S. 296, 300, . . . (1998) (internal quotations omitted). Accordingly, any claim for indemnity resulting from this suit is not ripe until the underlying liability has been established. *See Doe v. City of Chi.*, 360 F.3d 667, 672 (7th Cir. 2004) ('We have warned repeatedly against trying to resolve indemnity before liability.'); *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) ('We regularly say that decisions about indemnity should be postponed until the underlying liability has been established.').

*Sowell*, 2011 WL 294758, at *14. Buncich argues that "[a]t this point, it is not clear whether any individual officer defendants named in this litigation will be held liable under any claim[] alleged by Plaintiff. Therefore, Plaintiff's state law indemnity claim . . . is premature . . . [and] must be dismissed for lack of subject matter jurisdiction." Defendant's Memorandum, p. 11.

Smith's response on this issue is again a curious one. She argues that her indemnification claim is proper at the initial complaint stage and cites several cases she claims support her position. Plaintiff's Response, p. 11. Buncich, however, argues in his reply brief that Smith's argument "erroneously cites case law concerning the analysis of the Illinois indemnification

statute, . . . which is inapplicable to the instant case." Defendant's Reply, p. 5. Buncich is

correct–none of the (four) cases cited by Smith (*see* Plaintiff's Response, p. 11) are applicable.

The *Sowell* case, on the other hand, is. And for the same reasons, Smith's indemnification claim

must be dismissed.

Dismissal of this claim, however, must be without prejudice, since the court is not

reaching the merits of the claim. *See Henderson v. Adams*, —F.Supp.3d—, 2016 WL 3548645, at

*8 (S.D. Ind. June 30, 2016) ("'A dismissal for lack of federal jurisdiction is without

prejudice.'") (quoting *Bovee v. Broom*, 732 F.3d 743 (7th Cir. 2013)); *see also El v. AmeriCredit

Fin. Servs., Inc.*, 710 F.3d 748, 751 (7th Cir. 2013) ("Dismissals because of absence of federal

jurisdiction ordinarily are without prejudice . . . 'because . . . once a court determines it lacks

jurisdiction over a claim, it perforce lacks jurisdiction to make any determination of the merits of

the underlying claim.'") (quoting *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1217 (10th

Cir. 2006)). For these reasons, Smith's claim for indemnification against Buncich is dismissed

without prejudice.

### III. Plaintiff's motion to dismiss Defendant Lake County's counterclaim.

Defendant Lake County filed its answer to Smith's Amended Complaint on April 20,

2016, and included a counterclaim for abuse of process. Lake County Answer and Counter-Claim

(DE 34), pp. 38-40. Specifically, the County alleged that Smith "has committed the tort of abuse

of process under Indiana law as she has misused or misapplied civil process, for an end other

than that which it was designed to accomplish, by filing and continuing to prosecute groundless

and frivolous claims against an improper party, namely Lake County, Indiana." *Id.*, p. 40. Lake

County argues that it is a municipal entity separate and apart from the Lake County Sheriff's

Department and that "official capacity and *Monell* claims against Correctional Officers are deemed, as a matter of law, claims against the Lake County Sheriff's Department and not Lake County . . . ." Lake County Response to Plaintiff's Motion to Dismiss Counterclaim, p. 7 (citations omitted). Even worse, claims Lake County, Smith knew this all along but still pressed claims against Lake County that are "'improper, redundant, without merit and will require[] Lake County to appear and defend against frivolous allegations for which it cannot be held liable.'" *Id.*, p. 6 (quoting Answer and Counterclaim). This conduct, according to Lake County, is "'malicious and made in bad faith.'" *Id.* By way of its counterclaim, Lake County seeks to recover compensatory damages, punitive damages, costs, and attorneys' fees from Smith for what it characterizes as her "improper" and "frivolous" pursuit of claims against the County, an entity she knew all along she could not sue under the facts of this case.

Smith's motion to dismiss the counterclaim, which she brings pursuant to Rule 12(b)(6), is based on her contention that Lake County "has failed to demonstrate the[] elements" of an abuse of process claim. Plaintiff's Motion to Dismiss Counterclaim (DE 60), p. 5. Smith maintains that she has done nothing wrong, that her use of the legal process "was not improper[,]" and her actions in asserting claims against the County "were procedurally and substanti[ve]ly proper." *Id.*

As one Indiana court explained in *E. Point Bus. Park, LLC v. Private Real Estate Holdings, LLC*: "[a]n action for abuse of process has two elements: (1) ulterior purpose or motives, and (2) a willful act in the use of process not proper in the regular conduct of the proceeding. . . . However, if a party's acts are procedurally and substantively proper under the circumstances, then that party's intent is irrelevant. . . . A party may not be held liable for abuse

of process if the legal process has been used to accomplish an outcome which the process was designed to accomplish. *Id., see also Cent. Nat'l Bank of Greencastle v. Shoup*, 501 N.E.2d 1090, 1095 (Ind.Ct.App. 1986) ("[a] regular and legitimate use of process, though with an ulterior motive or bad intention is not a malicious abuse of process") (quoting *Brown v. Robertson*, 120 Ind.App. 434, 92 N.E.2d 856, 858 (Ind.Ct.App. 1950))." *E. Point Bus. Park, LLC v. Private Real Estate Holdings, LLC*, 49 N.E.3d 589, 604-05 (Ind.Ct.App. 2015).

Both Smith in her motion to dismiss and Lake County in its opposition brief argue about the elements of an abuse of process claim. That is, they debate whether Smith's inclusion of claims against the County was malicious or frivolous (in that it needlessly forced the County to appear and answer this lawsuit, and incur costs and attorney's fees to defend it) or whether she had a legitimate basis for doing so (in that she believed she had valid *Monell* or *respondeat superior* claims against the County even though it did not employ the alleged tortfeasors).[4] But none of this matters now. The only task facing the Court is determining whether Lake County's allegations supporting its counterclaim are sufficient to state a claim under Rule 12(b)(6); the merits of that claim (or of Smith's defenses) are not at issue.

Lake County's allegations in support of its counterclaim are recited in great detail in its Answer and Counterclaim. By way of summary, they include the following:

---

[4] It did not escape the Court's notice that Smith fails to elaborate on the legal basis for her claims against the County, given that she does not dispute (and therefore tacitly concedes) that the County has no supervisory or administrative control over the Lake County Sheriff's Department, Sheriff Bunich, or the individual officer defendants. Instead, she merely implies that she has such a basis and, therefore, her actions in pursuing claims against the County are and were proper. But again, this goes to the merits of Lake County's counterclaim and Smith's defenses, not to the issue of whether the County has pleaded its counterclaim sufficiently, which it has.

1) Smith "asserts official capacity and *Monell* claims against Lake County that are, as a matter of law, claims against . . . the Lake County Sheriff and/or the Lake County Sheriff's Department.";

2) Smith "knew, or had reason to know, at the time the Amended Complaint was filed that Lake County had no supervisory control or policymaking authority over the . . . defendant Correctional Officers, the Lake County Sheriff or the Lake County Sheriff's Department.";

3) Smith knew, at the time she filed her Amended Complaint, "that Lake County cannot be held liable under *respondeat superior* for claims related to" torts allegedly committed by employees of the Sheriff's Department; and

4) Smith "has misused or misapplied civil process . . . by filing and continuing to prosecute groundless and frivolous claims against an improper party[.]"

Lake County Response, pp. 5-6 (quoting Answer and Counterclaim).

Taken as true, and drawing all reasonable inferences in favor of Lake County, those allegations are sufficient to allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged," which is all that is necessary to survive a Rule 12(b)(6) motion to dismiss. For these reasons, the Plaintiff's motion to dismiss Defendant Lake County's counterclaim is denied.

## CONCLUSION

For the reasons set forth in this Opinion and Order, the motion to dismiss filed by Buncich is GRANTED in part, DENIED in part, and MOOT in part. The motion is MOOT as to any and all claims asserted against Defendant Buncich in his *individual* capacity; the motion is DENIED as to Plaintiff's claims against Buncich in his *official* capacity (i.e., the Plaintiff's claim under *Monell v. Dep't of Soc. Servs. of City of New York*); the motion is DENIED as to the

Plaintiff's claim against Buncich based on a state law theory of *respondeat superior*; and the

motion is GRANTED as to the Plaintiff's claim for indemnification. The motion to dismiss filed

by Town of Merrillville and Officer Ridgway is GRANTED and those two Defendants are

dismissed as parties to this case. The Plaintiff's motion to dismiss Defendant Lake County's

counterclaim is DENIED.


Date: February 13, 2017.

  /s/   William C. Lee  
William C. Lee, Judge
United States District Court
Northern District of Indiana